MATTHEW ALBRITTON AND ANOTHER VS. BIRD EXECUTOR OF
BULLOCH.

*In Equity—Bill for an account—Discovery and injunction.*

If sufficient grounds are shewn for an injunction, it may be granted to restrain the proceedings
of a Court of common law, at any stage of such proceedings.

An injunction will not be granted, if the person seeking it, could by proper vigilance, have pro-
tected himself from injury, by the ordinary means at law.

Where the party has been prevented from availing himself of his legal defence, by the irregu-
larity of commissioners nominated by himself to take testimony, or the misconduct of his
attorney, he will not be entitled to an injunction.

An heir or legatee is not entitled to take possession of any part of the estate of his ancestor or
testator, until it be delivered to him by the act of the legal representative, or the law.

### By CHARLTON, Judge.

THIS bill alleges that *James Bulloch*, of the county of Bryan,
died on or about the 20th of December, 1790, seized and pos-
sessed of real and personal estates, leaving a widow *Dinah*, and
two daughters, his only heirs, who intermarried with the plain-
tiffs: that, as complainants believe, he left a will devising his
property to his wife, during her life, or during her widowhood,
to go over, upon the happening of either contingency, to the
wives of the complainants, *Ann* and *Abigail*: that upon his
death, the widow took possession of his estates, and particularly
of a negro woman called *Binah*, and a considerable stock of
cattle: that this will, as complainants have every reason to be-
lieve, remained in the possession of the widow, during her life
time, and on her decease, came into the hands of her executor,
the defendant; that *Dinah*, the widow of *James Bulloch*, de-
parted this life some time in May, 1816, having made a will, in
which she devised and bequeathed her estates, to one *Andrew
Bird*, and the wives of complainants, equally to be divided be-
tween them: that she gave a legacy of $500, to *Alexander
Bird*, whom, with *Andrew* and *James Bird*, she constituted

her executors : that *Alexander Bird*, qualified as executor, and
proceeded to discharge his duties in that capacity : that the com-
plainants, out of respect to the widow, and desirous of leav-
ing her in possession of every comfort during her life time, and
believing, that upon her decease, they would readily obtain the
property they were entitled to, as appertaining to the estate of
*James Bulloch*, delayed to assert, or claim their rights : that
upon her decease, conceiving the will could only operate upon
property, which belonged to her, they took possession of all
property they could designate and find, which, (under impres-
sions before stated,) belonged to the estate of *James Bulloch :*
that the property so taken possession of by them, consisted of
the said negro woman *Binah*, and her issue of two children,
and about sixty head of cattle : that to this act, though present,
the executor, *Alexander Bird*, did not object, and acquiesced
in it, for several months : but in March, 1818, brought an ac-
tion of trover, in the Superior Court of *Bulloch* county, against
complainants, to recover the value of these negroes and cattle,
as component parts of the estate of his testatrix, *Dinah Bulloch ;*
that contrary to the justice of the case, and in consequence, (as
complainants are advised) of the irregularity of the commission-
ers, appointed to examine a material witness, residing in Bryan
county, which precluded the admission of his written testimony,
and in consequence of many matters, of great importance to
complainants, lying in the exclusive knowledge of defendant, to
this bill, a verdict was rendered against complainants, for a re-
turn of the negroes and cattle, or, payment of their value, as-
sessed by the Jury, within thirty days.

These are the material allegations, upon which the prayer for
injunction can be acceded to—it being applied for, to stay and
restrain (until full answer comes in and a plenary investigation
takes place,) all further proceedings upon this verdict.　The bill
also prays for an account, co-extensive with all matters alleged
in relation to the estates of *James* and *Dinah Bulloch*, for a dis-

covery particularly as to the will of *James Bulloch* and for general relief.

My attention is necessarily now confined to the application for the injunction. If this is granted, the complainants profess their willingness, and their ability, to give any security for the ulterior safety and indemnity of the executor, which the Court may require.

The cases, which *Law* and *Jackson* cited and adduced, to shew the power of a Chancellor, in granting the writ of injunction, are not doubted. The principles they advance, I readily admit; because the learned research of Mr. *Jackson*, in the numerous precedents referred to by him, establish the doctrine, that no stage of a common law proceeding, no matter what appellation it may assume, can present an insurmountable barrier to the energies of an injunction. Let the foundation of the application be any species of iniquity, which a Court of common law cannot remedy, and if the party, upon whom it operates, can step forth with clear hands, and exhibit himself the supplicating victim of fraud, oppression, perfidy and injustice, equity will interpose, and take him under the protection of her abstract principles of right. A verdict, a judgment, or an execution, therefore, forms no obstacle to this interposition. This being the law of chancery, I shall, I hope, be excused from noticing the cases adduced by Mr. *Jackson*, illustrative of it.

Is there in this case, as disclosed by the allegations bearing upon this application, any combination of fraudulent circumstances which could not have been met, and repelled, by a common law investigation? What are the bases of the application? They are these: that the negro *Binah* and her subsequent issue, and the cattle, are, as the complainants believe, the property of the estate of *James Bulloch*, and that fact would they think have appeared but for the irregularity of the commissioners, which repu-

diated from the common law trial, the testimony of a material witness ; and the concealment of important matters, resting in the exclusive personal knowledge of the executor.

If the establishment of the rights of the complainants depended essentially upon facts within the knowledge of the defendant, the plain, obvious, and perfectly accessible remedy was, a bill for discovery to be used as auxilliary to their legal defence.   Not having resorted to this remedy, but suffering a time to elapse, within which they might have resorted to it, is a laches, a *crassa negligentia* which can never be aided by a Court of chancery.   The application for an injunction must derive its main strength from the exhaustion of every vigilant effort, to obtain redress at common law.   I shall then unhesitatingly reject this, as a ground upon which, I could be authorized, to restrain the proceedings.

The other basis of the application offers a difficulty, of equal magnitude, to the interference of a chancery jurisdiction.   It lays no fraud, no circumvention, no culpability at the door of the executor, but charges mere irregularity or ignorance in the conduct of the commissioners appointed to take testimony, for and at the instance of the complainants.   But for this irregularity then, it appears that a Court of law could have compelled the discovery of facts, sought for in the testimony of the alleged material witness—a witness, material only, as the complainants are advised, but whether so or not, this Court cannot ascertain from any special allegation of the bill.   The doctrine is, that if such discovery could have been obtained in the progress of a common law investigation, chancery will not bare its arm, and aid the neglect in seeking it.   In other words, it is said by an American Chancellor, " if the Court of common law can compel the discovery, a Court of equity will not interfere; and facts which depend upon the testimony of witnesses, can be procured or proved at law, because Courts of law can compel the attendance of witnesses."   *Gelston* vs. *Hoyt.*   (1 *John.* Chan. Rep. 547.)   In that case, as well as

this, every fact in the knowledge of the witness, material to the defence, could have been proved by the ordinary means at law, without resorting to the aid of equity. The complainants in this case, have suffered from the irregularity of persons nominated by themselves, and can urge no imputation against the conduct of the plaintiff at common law. Upon a similar ground, and with equal propriety, they might resort to a Court of equity, for its interference to remedy injuries inflicted, by the misconduct of an attorney in not complying with rules of Court, and thus draw within the chancery vortex, the attributes, functions and well defined powers of every other jurisdiction. The complainants therefore, must stand the loss, of this con-compliance with the requisites of a Court of common law, attached to the admissibility of testimony, taken by commission. But I am required to go much further. I am called upon to acknowledge the legality of conduct, in these complainants, in taking possession of property, supposed and believed to be theirs, under the will of *James Bulloch*, or, as having belonged to his estate in the absence of any will, or instrument to direct us in the supposition and belief, and against the legal right of the executor, to retain the property, as ostensibly belonging to the estate of *Dinah Bulloch*, with all his responsibility to account and amenability to an order for distribution. To admit this, would be in so many words to admit the right of every heir to an estate, to decide for himself, as to what share he was entitled to, under every form of proprietary interest, to seize it, when opportunity offered, and drive the trustee or executor to remedies legal or equitable, for the purpose of re-possessing himself of property which the law had placed in his custody—and of which only the law could divest him. For these reasons the rule and order suspending further proceedings at law, are set aside, and the motion for an injunction dissolved. But the bill is sanctioned and retained for all its other purposes: and it is the only remedy the complainants ever had, or can have, for the ascertainment of rights and interests disclosed in its allegations. The executor, is

PART I.—N.

now perhaps the only person who can marshal the assets of the estates, and an appeal to his conscience must lay the foundations of the relief sought for, by the complainants.

*Ordered*, that the rule in this case to stay proceedings and to shew cause why an injunction should not be granted, be and is hereby set aside and dissolved.    And it is further ordered, that a copy of this order be forthwith forwarded to, or served on the Sheriff of *Bulloch county*, and a copy of the whole decision be sent to the Clerk of the Superior Court of said county, with instructions to place the same on the book of minutes of said Superior Court.

LAW & JACKSON—for the rule.